Elizabeth Barros, Federal Defenders of San Diego, on behalf of the appellant, Mr. Zamora-Resendiz. Before you get started, could you just give us your view? Obviously, I think he was released on the 19th. A view as to why this wouldn't be moved? Certainly, Your Honor. I received a fax at about, shortly after 4 o'clock yesterday, with a 28-J letter from the government, citing the case of Palumbo. I did some quick research on the issue, and I think there are several, three cases, at least, on point in the Ninth Circuit. The first case, United States v. Verdeen, distinguishes Palumbo and notes in Verdeen the individual was still on supervised release, just as Mr. Zamora-Resendiz is. Mr. Zamora-Resendiz, like Mr. Verdeen, is in his first out of three years of supervised release. And in that case, this Court clearly distinguished the case of Palumbo. Most recently, in United States v. Allen, that was a case earlier this year. The Ninth Circuit again noted that an issue is not moved when an individual is on supervised release, and the district court could, upon resentencing, sentence the individual to a lesser term of supervised release. And if the Court would like, I could provide a 28-J letter with the cites for those cases. Well, I had thought that originally. I mean, the government makes the argument that it wouldn't make any difference because his term of supervised release would be the same. That's not necessarily correct. In fact, in Verdeen, the guideline range for the supervised release term was the same, regardless of whether or not the adjusted offense level would have gone down. The point this Court made in Verdeen is that the court, the district court, would have discretion to impose the low term. There, the Court noted that the district court could impose two years instead of three years. Here, Mr. Zamora-Resendiz received one year of supervised release. And even under the guidelines, I'm sorry, one year of custody and three years of supervised release, even under the guidelines, supervised release is advisory when you receive one year or less of supervised release. The Court here, even under the advisory guidelines, was not obligated to impose any supervised release but imposed three years. Thank you. Your Honors, this case, this is an appeal from the sentence imposed by the district court, and the issues in this case involve what the Supreme Court has previously described as the extraordinary case in which the district court, on its own initiative and contrary to the expectations of both the defendant and the government, decides to impose an upward departure without any notice. Let me stop you there. We're all operating in a new environment, so we're feeling our way through. But as I read the sentencing transcript, I don't know that the district court conceived it as an upward departure. When he did the guidelines calculation, and there doesn't seem to be a dispute as to the guidelines calculation, he said, knowing that the guidelines are now advisory, that his judgment was a reasonable sentence applying the factors was something higher, and he went there based on his application of his authority under Booker. Do you have a different view than that? Well, even if we were to view it as a variance from the guidelines under Section 3553A and not an upward departure, this Court very recently in the United States v. Evans-Martinez, and that's 448F 3rd 1163, noted that even in the case of a variance, Rule 32H still applies and notice is still required, and that was a decision issued by this Court on June 1st of this year. Was it made that kind of a major holding in the footnote? No, I don't believe that it was in a footnote. That was, I think, the premise of the case was that Rule 32H still applies post-Booker to a sentence outside of the guideline range. Several other circuits have agreed with the Ninth Circuit, actually, some prior to this Court's decision and this Court's decision in Evans-Martinez. I think the Tenth Circuit was the first out of the door in the case of Dozier, which is cited in my briefs, and there are several other circuits that have since taken that position as well. So I think even if it were to be considered a variance, notice is still required. And I would note that in several cases, and I think Bokhari from the Seventh Circuit, which is cited in my briefs, note that it's even worse when the district court doesn't specify whether it's a variance or whether it's an upward departure because it makes it more difficult for this court to review what was done in the district court. And so I think that is just really one more reason why the court should reverse the sentence. I don't have any trouble seeing it as a variance. I just think it was explicit that way. And that raises a couple different questions. You've identified one, Evans-Martinez does speak to the issue of what notice is but also has an impact on all the other arguments. And I understand you're dealing with case law where Booker is new. But it seems to me your arguments that say, for example, that you can't consider the juvenile apprehensions because it's not in the list that the guidelines let you consider, well, that's kind of off the board now. And so as to those issues, and time is limited, but I wonder, is there anything you have to speak to why it is or is there a specific reason why the juvenile apprehension is exercising his post-Booker authority to vary? Well, I think that the guidelines still being discretionary would provide guidance on that. And had I had notice and had I been able to look to the guidelines and explain to the district judge in this case that the guidelines don't recommend an upward departure for underrepresentation of criminal history, or they only recommend it in the case of adult conduct, perhaps that would have swayed the judge here. I'm not entirely convinced that it wasn't an upward departure. He clearly spoke in pre-Booker language of it being a case of a clear case of underrepresentation of criminal history. And so the language invoked by the district court mirrors the language in the guidelines. So I think that it's not clear that it was just a variance. But even if it were, the guidelines are still there for a purpose. And had I had the opportunity to point out the guidelines and their recommendations, it may have swayed the court. So the focus, I guess, going back to the Evans-Martinez issue gets to be is the fact that the pre-sentence report here identifies all these juvenile apprehensions and makes a statement kind of in the abstract. I mean, the wording of it is a little peculiar, but it makes a statement which seems to say, you know, this is one of the possibilities. You could give consideration to these. The report ultimately recommends no. But is that sufficient notice, or why isn't that sufficient notice? Well, because it didn't identify the specific legal basis for a greater sentence here. And as this Court previously has identified in cases like Hinojosa-Gomez, the pre-sentence report must provide not only the factual basis, not only the underlying conduct, but the specific legal basis for an upward departure as well. And in Hinojosa-Gomez, it had, I think, similar language where it identified the conduct and actually recommended an upward departure, which wasn't recommended in the pre-sentence report here, and this Court still reversed. If the Court would like, I can move on to some of the other issues. Or perhaps I'll reserve my remaining time. I see the clock is okay. Thank you. All right. Mr. Arnold. Good morning, Your Honors. May it please the Court, Carl Arnold on behalf of the United States. The first issue I'd like to discuss is the mootness. Again, he was released on July 19, 2006. In regards to the Verdin case, I think that's very distinguishable. It's distinguishable because in that case, with the obstruction of enhancement, that would have put the defendant at a higher offense level. In this case, we do not have a higher offense level. The supervised release was already dictated to be three years. In that case, the judge could have had the discretion in the U.S. v. Verdin. He could have had the discretion to make it lower. The district court in this case, in this appellant's case, decided to go ahead and give him the three years. Well, he could decide not to, too, I would suppose, if there's re-sentencing. Yes. But, again, looking at the record, looking at the different juvenile contacts, he already made that decision. It'd be speculation at this point as to whether he would give him a lower supervised release or not. Well, if the possibility's there, unless you can foreclose the possibility. I mean, we just heard from defense counsel, for example, that had she anticipated what the judge was going to do, she would have had arguments prepared to try to talk him out of the sentence that he imposed. Possibility's there. He might have been persuaded. Now, if it's re-sentenced, the time in jail's already been served, but maybe he's persuaded, well, maybe I shouldn't have given him quite that long, so I'll trim something off the supervised release. I mean, granted, it's somewhat theoretical, but that's what seems to be in front of us. And my reading of the Spencer v. Chemnitz case, the Supreme Court case, and that's where we run into problems when we start doing a speculation. It needs to be a concrete injury, and there's no concrete injury in this case. Well, I guess there is. He's kind of a pathologic border crosser. And that being the case, the odds of his violating supervised release may be pretty good, so it may not be really too collateral a consequence. It may be a real one. Yeah. Again, and the Spencer case addressed that. We can't do that type of speculation. It's his duty to go ahead and not violate the laws anymore. Do you know if he's still in this country, or has he been removed? We try to look up that information in the short notice, but I would believe that he's already in Mexico. He could be back. It's been a week. He could be on his way back, yes. Let me switch gears, if I may, to Evans-Martinez. You know, I can conjure some possible distinctions, but at the end of the day it seems to me it's essentially impossible to say that it doesn't control this case in that we should not remand it, give the district court another shot, and give the Senate another shot at stating, at arguing for the variance or against it. I'm not totally familiar with the holding in that case, but in regards to Well, that's a real problem, then. Right. Because what it basically, well In case you don't recognize the name, this is the one that the defendant gave us a 28-J letter a month ago on. So that's kind of the core of this issue right now. I believe in hearing the discussions previously that whether it be an upward departure or a variance, the judge had ample justification to make his decision. Well, maybe, but that's not really the heart of the issue. The heart of the issue is whether the defendant had notice of the district court's intent to sentence outside either the guidelines Well, to sentence outside the guidelines. And what Evans says is that that rule is the same post-Booker as pre-Booker. And I think, again, that notice was there. First, in the pre-sentence report. Well, where does it say in the pre-sentence? It says the facts are all laid out. But where in the pre-sentence report does it say that underrepresentation of criminal history in this guy's congenital passion for crossing the border Can be considered for upward departure. Is possible ground either for upward departure or for variance applying 3553A. It was on page 17 of the pre-sentence report, Your Honor. And that's where it says. Well, it uses the language the judge ultimately uses about criminal. It may underrepresent criminal history. Category one may underrepresent what he's where he actually should be. That's correct. And it could be argued that that's why I say the phraseology is a little peculiar. So it identifies the possibility of making a departure under the guideline framework for underrepresented criminal history. It doesn't speak to this proclivity for crossing the border, at least not directly. I suppose you could infer that from the laundry list. But it doesn't say anything specific about that. Does that notice enough to put the defendant under the cases, the pre-Booker cases, does that notice enough to put the defendant on alert? I believe so. And then when the first comment from the judge during sentencing was that he's considering doing a six-month sentence and going outside. Actually the comment was made after he had already imposed sentence, wasn't it? No. So the first comment was when he invited counsel to start discussing the case. Why shouldn't I do six months? But that didn't help because six months was what the pre-sentence report recommended. Right. He wound up imposing 12. So to say why shouldn't I do, say to, if she was there at the time, as far as to say why shouldn't I do what the pre-sentence report says and sentence him to six months. She doesn't know from that that he's considering going up to 12. So how is that notice? I think it's notice in the fact that what other comments would have been different? Well, I'm considering going higher. I'm considering departing or varying upwards because of criminal history and because of this proclivity to cross the border. I believe the factors that were outlined by Ms. Boros in discussing why he should not go to the six months and follow the plea agreement would have been the same arguments that would have been used if he had went outside. Now, one of the problems with oral argument, and you're experiencing it here, is you can't tell what you're going to get. You perhaps didn't anticipate Evans-Martinez. If you'd anticipated it, I suspect you'd have been ready to speak specifically to the details of that case. Right. But you weren't. She wasn't anticipating, it appears, what she got, and so she wasn't ready to say to the judge, Your Honor, if you look at the guidelines, it's very explicit in what you consider and what you don't for upward departures for underrepresented criminal history. These juvenile apprehensions aren't on the list. You really can't properly consider those. Now, that might have been an argument that would have affected the district court. She didn't make it because it didn't occur to her when she suddenly presented with this situation. It seems to me that's exactly what Rule 32 and the Supreme Court's decision was intended to prevent from happening. Right. And, you know, having been at the sentencing, I still think the judge would have ---- I think the odds are quite good. No question about it. If the odds are quite good, the sentence would be the same. But our cases don't turn on would it have made a difference after the fact. They turn on did the defendant have a fair chance to argue the issues, which it turns out drove the judge to either depart upward or vary upward, depending on the case. And I don't think it was just the juvenile contacts that drove this judge to make the decision. He also talks about the defendant's demeanor. And it's something that could have only been appreciated being there at the sentence. You know, combined with him reading that laundry list and the defendant's demeanor as a just total utter disregard of what was happening in the judicial proceedings drove the judge to go beyond his six months. And we have to take that into consideration, too. I see my time is up. Okay. Thank you, Mr. Arnold. Ms. Roers. Your Honors, just briefly, I would like to address the government's argument that the new argument that noticed was properly given. I would note in the government's brief on page 11, the government states, although the district court did not provide Mr. Zamora with notice. On government's brief, page 12, the government noted the district court failed to give notice to Zamora that it intended to impose a sentence outside of the applicable guideline range. On page 14 of the government's brief, the government noted, although the district court did not advise Zamora that he was inclined to impose an upward departure. And, again, on page 15 of the government's brief, the government notes, the judicial proceeding was not undermined by the district court's plain error in not complying with Rule 32H. So I think that any argument that the notice was proper has been waived by the government, and this Court has repeatedly said that the government can waive arguments in Garcia-Lopez and in cases like Garcia-Lopez and Doe. In any event, I don't think the notice was proper here under the Court's previous case law, Hinojosa-Gomez and the like. Furthermore, if it was a variance and not an upward departure, there was no notice whatsoever in the pre-sentence report that a variance would be considered. And, furthermore, as the Court noted a few minutes ago, at the beginning of the hearing, the district court asked, why should I not impose 6 months, which was the recommendation in the pre-sentence report. It was the high end of the guideline range. And instead of imposing 6 months as was only notice provided at the beginning of the hearing, the Court imposed double that, imposed 12 months, which is the equivalent really in this case of a two-level departure in criminal history categories from a criminal history Category 1 to a Category 3. And so with that, Your Honors, I would submit that the proper notice was not provided in this case. And just briefly with respect to Spencer v. Chemna, the individual in that case was not, was no longer on parole for the case that was being litigated and that the more recent cases from the Ninth Circuit would control on that issue. Thank you. All right. Thank you. As far as the matter just argued to be submitted.
judges: Gibson, Rymer, Clifton